Brittany Weiner
Murray Friedman
IMBESI LAW P.C.
450 Seventh Avenue, Suite 1408
New York, New York 10123
(646) 380-9555
(646) 790-3851
brittany@lawicm.com
murray@lawicb.com

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------X
BRITTANY CRITTENDEN, individually, and on behalf
of all others similarly situated,

                    Plaintiff,

                    v.

STARBUCKS CORPORATION,

                    Defendant.
--------------------------------------------------------------------X

**Case No.:**

**CLASS ACTION**
**COMPLAINT**

Plaintiff Brittany Crittenden ("Ms. Crittenden" or "Plaintiff") brings this putative class

action on behalf of herself and all other similarly situated persons against Defendant Starbucks

Corporation ("Starbucks"), and alleges as follows:

**NATURE OF THE ACTION**

1.      Plaintiff brings this putative class action against Defendant seeking damages

sustained as a direct and proximate result of Defendant's violations of New York General

Business Law ("GBL) §§ 349 and 350, breach of warranty, fraudulent concealment and/or

inducement, negligent misrepresentation and unjust enrichment in connection with Defendant's

marketing and sales of Starbucks espresso beverages. Plaintiff and putative Class members have

been, and continue to be, injured by Defendant's pattern and practice of placing into the stream

of commerce espresso beverages containing a false, inflated serving size, which Defendant

manufactures, distribute and sell.

2.      Plaintiff is one of millions of New York consumers who purchased Starbucks espresso beverages for consumption based upon their advertised serving size but who were denied the advertised serving size.

3.      Defendant has known, or should have known, for years that Starbucks espresso beverages contain less fluid ounces per serving size than Defendant otherwise advertises, causing Plaintiff and Class members to overpay for the Starbucks espresso beverages based upon a false, inflated serving size.

4.      Without correcting its material misrepresentations or omissions, Defendant has overcharged Plaintiff and Class members, and continues to do so, without warning Plaintiff and Class members that Starbucks espresso beverages contain less ounces per serving size than Defendant otherwise advertises.

5.      With notice and knowledge of its material misrepresentations or omissions, Defendant has not offered to compensate its customers to remedy their damages.

6.      Had Plaintiff and members of the putative Class known that Starbucks espresso beverages contain less fluid ounces per serving size than Defendant otherwise advertises, Plaintiff and members of the putative Class would not have purchased the Starbucks espresso beverages for the agreed upon purchase price.

7.      As a direct and proximate result of Defendant's deceptive acts and practices in connection with its Starbucks espresso beverages, Plaintiff and members of the putative Class have sustained economic injury by overpaying and being deprived of the full intended use of their purchased Starbucks espresso beverages.

8.      Plaintiff seeks damages and equitable remedies under statutory and common law claims for herself and members of the putative Class, of which Plaintiff is a member. Identified

definitively below, the putative Class includes consumers who have purchased Starbucks

beverages in the following variations: 1) Latte drinks and 2) Mocha drinks (the "Beverages").

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

§1332 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in

controversy exceeding $5,000,000, exclusive of interest and costs, to a reasonable probability;

and (iii) there is minimal diversity because at least one of Plaintiff is a citizen of a state different

from at least one Defendant.

10.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant

to 28 U.S.C. § 1367 because the state law claims are so closely related to the federal claims that

they form part of the same case or controversy.

11.     Venue is proper in this District pursuant to 28 U.S.C. §1391 inasmuch as (i) many

of the acts and transactions giving rise to this action occurred in this District; (ii) Defendants are

authorized to conduct business in this District and have intentionally availed themselves of the

laws and markets within this District through the marketing, distribution and sale of its products

in this District and (iii) Defendants currently do substantial business in this District.

## PARTIES

12.     Plaintiff is a citizen of the State of New York and a resident of the County of New

York.

13.     Defendant Starbucks is a foreign business corporation with its headquarters and

principal place of business located in Seattle, Washington. Starbucks is licensed to and does

conduct business throughout the United States, including the State of New York.

14.     At all relevant times to this action, Defendant transacted business in this District.

**STATEMENT OF FACTS**

15.     Starbucks is a national coffee company and coffeehouse chain operating 23,450 retail locations worldwide, including 12,937 locations throughout the United States and over 200 locations in New York City.

16.     At all relevant times, Starbucks has developed, manufactured, marketed, sold and distributed its Beverages throughout the United States, including in the State of New York.

**I.   Starbucks Routinely Under fills its Beverages**

17.     At its retail locations, Starbucks uses the sizes "Tall", "Grande" and "Venti" to indicate sizes "small", "medium" and "large".

18.     Starbucks represents that hot beverages served in their "Tall" serving cups contain twelve (12) fluid ounces, "Grande" contain sixteen (16) fluid ounces and "Venti" sizes contain twenty (20) fluid ounces of liquid. However, contrary to its representations, Starbucks Beverages are regularly under filled.

19.     This practice of under filling its beverages is pursuant to a standardized recipe instituted in 2009. Starbucks instituted the recipe changes in order to save on the cost of milk.

20.     The recipe requires Starbucks' baristas to use specific measurements for milk, coffee, syrup, foam and any other ingredients that may be required for one of Starbucks' hot beverages. The measurements vary depending on the size and specific drink the customer ordered. Baristas do not have discretion in determining how much of any specific ingredient is used for Starbucks' hot beverages.

21.     When following the specifications prescribed by the standardized recipe, Starbucks Beverages contain less fluid ounces than otherwise advertised.

22.     Additionally, Starbucks' policy prohibits baristas from filling any hot beverage up to the rim of the cup. However, when filled to the rim, "Grande" serving cups hold exactly

sixteen (16) fluid ounces, "Tall" serving cups hold exactly twelve (12) fluid ounces, and "Venti"

serving cups hold exactly twenty (20) fluid ounces. Thus, per Starbucks' policy, Starbucks'

serving cups cannot accommodate the advertised beverage sizes.

## II. **Plaintiff Purchases Under filled Starbucks Beverages**

23.     On March 30, 2016, Plaintiff purchased one Tall Chai Tea Latte and one Venti

White Chocolate Mocha from the Starbucks store located at 593 Ninth Avenue, New York, NY.

Plaintiff did not request that the barista leave any open space in the cup. Plaintiff paid $3.45 for

the Tall Chai Tea Latte and $5.15 for the Venti White Chocolate Mocha.



24.     Plaintiff then returned to her home and poured each beverage into a measuring

cup. Though Starbucks represents that its Tall Beverages contain twelve (12) fluid ounces,

Plaintiff's Tall Chai Tea Latte measured ten (10) fluid ounces. Thus, Starbucks under filled

Plaintiff's Latte by two (2) ounces, or 16.67%.

5



25.     Though Starbucks represents that its Venti Beverages contain twenty (20) fluid ounces, Plaintiff's Venti White Chocolate Mocha measured seventeen (17) ounces. Thus, Starbucks under filled Plaintiff's Mocha by three (3) ounces, or 15%.



26.     As Plaintiff paid $3.45, or $0.29 per ounce, for the Tall Chai Tea Latte and $5.15, or $0.26 per ounce, for the Venti White Chocolate Mocha, Plaintiff overpaid $0.58 for the Latte

6

and $0.73 for the Mocha.

| Item | Price | Ounces | Price per Ounce | Actual Ounces in Drink | Amount Overcharged | Missing Ounces | % Missing |
|---|---|---|---|---|---|---|---|
| Tall Chai Tea Latte | $3.45 | 12 | $0.29 | 10 | $0.58 | 2 | 16.67% |
| Venti White Chocolate Mocha | $5.15 | 20 | $0.26 | 17 | $0.73 | 3 | 15.00% |

27.     At no time did Defendant advise either Plaintiff or Class members that its Starbucks espresso beverages contain less ounces per serving size than Defendant otherwise advertises, causing Plaintiff and Class members to overpay for the Starbucks espresso beverages based upon a false, inflated serving size.

28.     Plaintiff and Class members purchased Starbucks espresso beverages with no reason to suspect or know that the Beverages contain less fluid ounces per serving size than Defendant otherwise advertises.

29.     As the direct and proximate result of Defendant's false and misleading statements and omissions, Plaintiff and Class members have suffered economic injury by overpaying and being deprived of the full intended use of their purchased Starbucks espresso beverages.

30.     By marketing, selling and distributing Starbucks espresso beverages to purchasers throughout the United States, Defendant made actionable statements that the Beverages contained their advertised serving size.

31.     Defendant engaged in the above-described actionable statements, omissions and concealments with knowledge that the representations were false and/or misleading, and with the intent that consumers rely upon such concealment, suppression and omissions.

32.     Alternatively, Defendant was reckless in not knowing that these representations

were false and misleading at the time they were made. Defendant had exclusive access to data

and information concerning Starbucks espresso beverages' standardized recipe, preparation and

actual serving size that Plaintiff and Class members could not and did not review.

## CLASS ALLEGATIONS

33.     Plaintiff repeats and realleges every allegation above as if set forth herein in full.

34.     Plaintiff brings this action on her own behalf, and on behalf of the following

class pursuant to Fed. R. Civ. P. 23(a), 23(b) (2), and/or 23(b) (3):

> All persons or entities in New York who purchased latte and mocha beverages
> from Starbucks stores located throughout the state of New York from 2010 to the
> present.

35.     Excluded from the Class is Defendant, its affiliates, employees, officers and

directors, persons or entities that purchased the Starbucks espresso beverages for purposes of

resale, and the Judge(s) assigned to this case.

36.     Plaintiff reserves the right to amend or modify the Class definitions in connection

with a motion for class certification or as warranted by discovery.

37.     This action has been brought and may properly be maintained on behalf of the

Class proposed herein under the criteria set forth in Federal Rule of Civil Procedure 23.

38.      Plaintiff does not know the exact size of the proposed Class; however, Plaintiff

believes that the Class encompasses millions of individuals who are dispersed throughout the

State of New York. Therefore, the proposed Class is so numerous that joinder of all members is

impracticable.

39.     The identity and address of each class member can be readily ascertained through

mass advertisement. Class members may be notified of the pendency of this action by mail

and/or electronic mail and/or other electronic and social media means, by posting notice at

Starbucks stores where the subject product is sold, and by notifying past purchasers to identify

themselves in order to participate by way of affidavit or otherwise, supplemented (if deemed

necessary or appropriate by the Court) by published notice.

40.     There are questions of law and fact that are common to the Class, and

predominate over any questions affecting only individual members of the Class. The damages

sustained by Plaintiff and the other members of the Class flow from the common nucleus of

operative facts surrounding Defendant's misconduct. The common questions include, but are not

limited to the following:

a.   whether Starbucks espresso beverages contain less ounces per serving size than otherwise advertised;

b.   whether Defendant routinely charged customers who purchased Starbucks espresso beverages based upon a false, inflated serving size – resulting in customers being overcharged;

c.   whether Defendant warranted that Starbucks espresso beverages contained a specific "fl. oz." measurement for each serving size;

d.   whether Defendant's conduct constituted a breach of applicable warranties;

e.   whether Defendant unjustly enriched itself by overcharging customers for Starbucks espresso beverages;

f.   whether Defendant committed statutory and common law fraud;

g.   whether Defendant committed statutory and common law negligence;

h.   whether Defendant's conduct violated the New York Business Law § 349;

i.   whether Defendant's conduct violated the New York Business Law § 350;

j.   whether, as a result of Defendant's omissions and/or misrepresentations of material facts, Plaintiff and members of the Class have suffered an ascertainable loss of monies and/or property and/or value; and

k.   whether Plaintiff and Class members are entitled to monetary damages and/or other remedies and, if so, the nature of any such relief.

41.     Plaintiff's claims are typical of the claims of the Class since each Class member

was subject the same deceptive business practices and course of conduct. Furthermore, Plaintiff

and all members of the Class sustained monetary damages including, but not limited to,

ascertainable loss arising out of Defendant's wrongful conduct. Plaintiff is advancing the same

claims and legal theories on behalf of herself and all absent Class members.

42.     Plaintiff will fairly and adequately represent the interests of the Class. Plaintiff is

committed to the vigorous prosecution of the Class' claims and has retained attorneys who are

qualified to pursue this litigation and are experienced in class action litigation.

43.     A class action is superior to other methods for the fair and efficient adjudication

of this controversy. While substantial, the damages suffered by each individual Class member do

not justify the burden and expense of individual prosecution of the complex and extensive

litigation necessitated by Defendant's conduct. Further, it would be virtually impossible for the

members of the Class to individually and effectively redress the wrongs done to them. A class

action regarding the issues in this case does not create any problems of manageability. The class

action device presents far fewer management difficulties than alternative methods of

adjudication, and provides the benefit of single adjudication, economy of scale, and

comprehensive supervision by a single court.

44.     The Class may also be certified because:

    a.  the prosecution of separate actions by the individual members of the Class would
        create a risk of inconsistent or varying adjudication with respect to individual Class
        members which would establish incompatible standards of conduct for Defendant;

    b.  the prosecution of separate actions by individual Class members would create a risk
        of adjudications with respect to them which would, as a practical matter, be
        dispositive of the interests of the other Class members not parties to the
        adjudications, or substantially impair or impede the ability to protect their interests;
        and

    c.  Defendant has acted or refused to act on grounds generally applicable to the Class,
        thereby making appropriate final and injunctive relief with respect to the members
        of the Class as a whole.

45.     Separate and distinct from the damages caused by Defendant's unlawful conduct,

final injunctive and declaratory class-wide relief is also appropriate because Defendant has acted

or refused to act on grounds generally applicable to the class.

## COUNT I
## BREACH OF WARRANTY

46.     Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein

47.     Defendant sold Starbucks espresso beverages in its regular course of business.

Plaintiff and Class members purchased the Beverages.

48.     The Beverages are "consumer products" within the meaning of the Magnuson-

Moss Warranty Act, 15 U.S.C. § 2301(1), and New York, respectively.

49.     Plaintiff and Class members are "consumers" and "buyers" within the meaning of

the Magnuson-Moss Act, 15 U.S.C. § 2301(3) and New York law, respectively.

50.     Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-

Moss Warranty Act, 15 U.S.C. § 2301(4) – (5).

51.     Defendant is also a "manufacturer" and "seller" within the meaning of New York

law, respectively.

52.     Defendant made promises and representations in an express warranty provided to

all consumers, which became the basis of the bargain between Plaintiff, Class members, and

Defendant.

53.     Defendant's written affirmations of fact, promises and/or descriptions as alleged

are each a "written warranty." The affirmations of fact, promises and/or descriptions constitute a

"written warranty" within the meaning of the Magnuson-Moss Act, 15 U.S.C. §2301(6) and New

York law.

54.     By placing such products into the stream of commerce, by operation of law

including both New York law and the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et.*

*seq.*, Defendant also impliedly warranted to Plaintiff and Class members that Starbucks espresso

beverages were of merchantable quality (*i.e.*, a product of a high enough quality to make it fit for sale, usable for the purpose it was made, or of average worth in the marketplace,), would pass without objection in the trade or business, and were free from material defects, and reasonably fit for the use for which they were intended.

55.     Defendant breached all applicable warranties because Starbucks espresso beverages contain less fluid ounces per serving size than Defendant otherwise advertises, causing Plaintiff and Class members to overpay for the Beverages based upon a false, inflated serving size. This defect substantially impairs the use and value of Starbucks espresso beverages.

56.     The latent defect at issue herein existed when the Starbucks espresso beverages left Defendant's possession or control and was sold to Plaintiff and the Class members. The defect was undiscoverable to Plaintiff and the Class members at the time of purchase of the Starbucks espresso beverages.

57.     All conditions precedent to seeking liability under this claim for breach of express and implied warranty have been performed by or on behalf of Plaintiff and others in terms of paying for the goods at issue. Defendant has been aware or should have been aware of the defect in the Beverages and breach of the warranties, and has had an opportunity for years to cure the defect for Plaintiff and all Class members, but has failed to do so.

58.     Defendant breached its express and implied warranties, as Starbucks espresso beverages did not contain the properties Defendant represented.

59.     Defendant's breaches of warranty have caused Plaintiff and Class members to suffer monetary loss by overpaying for products, and enter into transactions they would not have entered into for the consideration paid. As a direct and proximate result of Defendant's breaches of warranty, Plaintiff and Class members have suffered damages and continue to suffer damages, including economic damages in terms of the cost of Starbucks espresso beverages.

60.     As a result of the breach of these warranties, Plaintiff and Class members are entitled to legal and equitable relief including damages, costs, attorneys' fees, rescission, and/or other relief as deemed appropriate, for an amount to compensate them for not receiving the benefit of their bargain.

## COUNT II
## VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349

61.     Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

62.     New York General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

63.     In its sale of goods throughout the State of New York, Defendant conducts business and trade within the meaning and intendment of New York General Business Law § 349.

64.     Plaintiff and members of the Class are consumers who purchased products from Defendant for their personal use.

65.     Defendant has engaged in deceptive and misleading practices, which include, without limitation, selling Starbucks espresso beverages containing less fluid ounces per serving size than Defendant otherwise advertises, causing Plaintiff and Class members to overpay for the Beverages based upon a false, inflated serving size.

66.     By reason of this conduct, Defendant has engaged and continues to engage in deceptive conduct in violation of the New York General Business Law.

67.     Defendant's actions are the direct, foreseeable, and proximate cause of the damages that Plaintiff and members of the Class have sustained from having paid for and consumed Defendant's products.

68.     As a result of Defendant's violations, Plaintiff and others similarly situated have

suffered damages and are entitled to recover those damages as well as reasonable attorney's fees from Defendant.

## COUNT III
## VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 350

69.     Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

70.     New York General Business Law § 350 prohibits false advertising in the conduct of any business, trade, or commerce.

71.     Pursuant to said statute, false advertising is defined as "advertising, including labeling, of a commodity… if such advertising is misleading in a material respect."

72.     Defendant was and is misleading in a material aspect due to false labeling and statements regarding its products, and has therefore directly violated New York General Business Law § 350, causing Plaintiff and others similarly situated damages.

73.     As a result of Defendant's violations, Plaintiff and others similarly situated have suffered damages due to said violation and are therefore entitled to recover damages and reasonable attorney's fees from Defendant.

## COUNT IV
## FRAUDULENT CONCEALMENT / FRAUDULENT INDUCEMENT

74.     Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

75.     Defendant had and continues to have a duty to warn consumers to whom it markets Starbucks espresso beverages that the Beverages contain less fluid ounces per serving size than Defendant otherwise advertises, causing Plaintiff and Class members to overpay for the Beverages based upon a false, inflated serving size.

76.     That Starbucks espresso beverages contain less fluid ounces per serving size than Defendant otherwise advertises is material information that Defendant has a duty to disclose to those purchasing Starbucks espresso beverages who, unlike Defendant, do not have access to

such information.

77.     Defendant, with the intent that Plaintiff and members of the putative Classes rely thereupon, has and continues to sell Starbucks espresso beverages as containing a false, inflated serving size.

78.     Defendant, with the intent that Plaintiff and members of the putative Classes rely thereupon, continues to sell Starbucks espresso beverages containing less fluid ounces per serving size than Defendant otherwise advertises, causing Plaintiff and Class members to overpay for the Beverages based upon a false, inflated serving size.

79.     Based upon Defendant's concealment of these material facts, Defendant induced consumers, including Plaintiff and members of the putative Classes, to rely upon Defendant's omission and misrepresentation, and to purchase and/or consume Starbucks espresso beverages.

80.     Plaintiff and members of the putative Classes have sustained economic injury as a direct and proximate result of Defendant's omissions and misrepresentations.

## COUNT V
## NEGLIGENT MISREPRESENTATION

81.     Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

82.     Defendant had and continues to have a duty to warn consumers to whom it sells Starbucks espresso beverages that the Beverages contain less fluid ounces per serving size than Defendant otherwise advertises, causing Plaintiff and Class members to overpay for the Beverages based upon a false, inflated serving size.

83.     That Starbucks espresso beverages contain less fluid ounces per serving size than Defendant otherwise advertises is material information that Defendant has a duty to disclose to those purchasing Starbucks espresso beverages who, unlike Defendant, do not have access to such information.

84.     At the time Defendant made its representations that Starbucks espresso beverages contain a false, inflated serving size, Defendant knew or should have known that these representations were false or that Defendant made them without knowledge of their truth or veracity.

85.     Having negligently misrepresented and/or negligently omitted these material facts, Defendant has and continues to sell Starbucks espresso beverages as containing a false, inflated serving size.

86.     Having negligently misrepresented and/or negligently omitted these material facts, Defendant has and continues to sell Starbucks espresso beverages containing less fluid ounces per serving size than Defendant otherwise advertises, causing Plaintiff and Class members to overpay for the Beverages based upon a false, inflated serving size.

87.     Based upon Defendant's negligent misrepresentation or concealment of these material facts, Defendant induced consumers, including Plaintiff and members of the putative Classes, to rely upon Defendant's omission and misrepresentation, and to purchase and/or consume Starbucks espresso beverages.

88.     Plaintiffs and members of the putative Classes have sustained economic injury as a direct and proximate result of Defendant's omissions and misrepresentations.

## COUNT VI
## UNJUST ENRICHMENT

89.     Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

90.     As Plaintiff and the Class show just grounds for recovering money to pay for benefit that Defendant received from them, they have a right to restitution at law through an action derived from the common-law writ of assumpsit by implying a contract at law, or a quasi-contract as an alternative to a claim for breach of contract.

91.     Plaintiff and members of the Class conferred a benefit upon Defendant by purchasing Starbucks Beverages from Defendant. Defendant had knowledge that this benefit was conferred upon them.

92.     Defendant, having received such benefit, is required to make restitution as the circumstances here are such that, as between the two, it is unjust for Defendant to retain such monies based on the illegal conduct described above. Such money or property belongs in good conscience to Plaintiff and the Class members and can be traced to funds or property in Defendant's possession. Plaintiff and Class members have unjustly enriched Defendant through payments and the resulting profit enjoyed by Defendant as a direct result of such payments. Plaintiff's and Class members' detriment and Defendant's enrichment were related to and flowed from the conduct challenged in this Complaint.

93.     An entity that has been unjustly enriched at the expense of another is required to make restitution to the other. Under common law principles recognized in claims of common counts, assumpsit, and quasi-contract, as well as principles of unjust enrichment, under the circumstances alleged herein it would be inequitable for Defendant to retain such benefit without paying restitution or damages therefor. Defendant should not be permitted to retain the benefit conferred via payments to be received from and/or paid by Plaintiff and Class members as a result of such transactions, and other remedies and claims may not permit them to obtain such relief, leaving them without an adequate remedy at law.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests relief against Defendant as set forth below:

        a.   An award of damages, including actual, general, special, incidental, statutory, punitive, treble and consequential, in an amount to be determined at trial;

        b.   Notice to the Class of this action;

    c.   An injunction against Defendant prohibiting Defendant from continued unlawful practices, policies and patterns set forth herein;

    d.   Appoint Plaintiff as the representative of the Class and her Counsel as Class counsel;

    e.   Pre-judgment and post-judgment interest as provided by law;

    f.   Reasonable attorneys' fees and costs; and

    g.   Such other and further relief that this Court deems appropriate.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all issues so triable.


Dated: New York, New York
       May 10, 2016

                            Respectfully Submitted,

                            IMBESI LAW P.C.

                            /s/ *Brittany Weiner*
                            Brittany Weiner, Esq.
                            /s/ *Murray Friedman*
                            Murray Friedman, Esq.
                            450 Seventh Avenue, Suite 1408
                            New York, New York 10123
                            (646) 380-9555
                            (646) 790-3851
                            brittany@lawicm.com
                            murray@lawicb.com